## Commonwealth v. Riggles

*Burrit L. Haag*, for Commonwealth.

*Abraham Lipez*, for defendant.

HIPPLE, P. J., September 4, 1940.—On August 3, 1939, defendant was convicted before a justice of the peace in

a summary proceeding and there was imposed upon him a fine of $200, together with the costs of prosecution, upon the charge of having violated section 724 of The Game Law of June 3, 1937, P. L. 1225, 34 PS §1311.724, in that on July 15, 1939, he unlawfully killed two wild deer found in a wild state and protected by the laws of the Commonwealth, the killing being done while the deer were damaging the garden and crops of defendant upon premises in Grugan Township, Clinton County, Pa., upon which defendant resided and of which he owned an undivided interest.

While the killing was admitted, an appeal from the conviction was allowed because defendant alleged (1) that section 724 of The Game Law, supra, was unconstitutional, being in violation of article I, sec. 1, of the Constitution of Pennsylvania, and (2) that, under the facts of the case, defendant came within the provisions of section 724, and the killing was therefore lawful.

The pertinent portions of section 724 of The Game Law provide as follows:

"(1) Nothing in this act shall be construed to prevent any person, as hereinafter defined and restricted, from killing, in any manner, except through the use of poison, or explosives, or snares, or steel traps, raccoons and woodchucks excepted, any of the animals or birds hereinafter stipulated which he may find actually engaged in the material destruction of cultivated crops, fruit trees, vegetables, livestock, poultry or beehives, or in the case of red squirrels or blackbirds destroying either the eggs or young of protected or game birds; or from destroying said animals or birds anywhere on the property under his control immediately following such destruction, or where the presence of said bird or animal on any such cultivated lands or fruit orchards is just cause for reasonable apprehension of additional imminent destruction.

"The word 'person' as used in this clause shall mean any person actually residing upon and cultivating, as a means of gaining a livelihood, any lands for general farm

crop purposes, commercial trucking, or fruit orchard or nursery being regularly maintained for commercial purposes, as either the owner or lessee of such lands, or a member of his family actually residing upon and regularly assisting in the cultivation thereof, or an employe of such owner or lessee hired on a monthly or annual basis and regularly assisting in the cultivation thereof, and where such owner or lessee shall, upon request of any representative of the commission, produce satisfactory evidence that material damage has been done within fifteen (15) days and that there was just cause for reasonable apprehension of additional imminent destruction, provided that such lands are open to public hunting and that no saltlick, bait, or other artificial means have been used to lure said animals or birds onto such lands.

"(2)  Any elk, deer, or bear may be legally killed only through the use of a firearm which discharges a single ball or bullet not smaller than a twenty-five calibre, under the foregoing provisions, provided a report is made as hereinafter required and other conditions stipulated are complied with; and . . .

"(4)  The provisions of this section shall be construed to permit the killing of those birds or animals enumerated herein, upon detached lands being cultivated for like purposes in common with lands upon which the actual residence of the operator is maintained, provided the killing thereof is reported and the carcasses are cared for as hereinafter stipulated, but no such birds or animals killed on any such detached land shall be retained for food.

"(5)  The person killing any such animal or bird, except woodchucks and red squirrels and the birds commonly known as blackbirds, shall within twelve (12) hours after killing, either orally or in writing, report such killing to the nearest game protector or the office of the commission at Harrisburg, setting forth the date and time of killing, the species killed, and in the case of elk, or deer, or bear the sex thereof, and shall, except in the case of red squirrels or the birds commonly known as blackbirds, im-

mediately after killing remove the entrails, and transfer the carcass to a place of safekeeping to be turned over to any game protector upon demand, except as hereinafter specified."

From the testimony taken at the hearing before the court, which is not in dispute except as to nonessential matters, it appears that defendant resides upon a piece of land in Grugan Township, containing approximately 70 acres, which was originally owned by his father, who died intestate leaving to survive him his wife and five children. His mother continues to live upon the property and defendant and his brother, Lawrence Riggles, reside in the home thereon, each on one side of the house. Defendant has a wife and four children, and is employed by the Works Projects Administration, earning approximately $47 monthly. His brother is also married, has a family of nine persons, works on the W. P. A. and earns approximately the same monthly wage as defendant.

Of the 70 acres, about one and a half acres were used as a garden jointly planted and cared for by defendant and his brother for general garden produce such as corn, potatoes, tomatoes, cabbage, and various kinds of vegetables. The garden itself is about one fourth or one half a mile from the house in which defendant and his brother live. For some time, considerable damage had been done to the garden by wild deer eating the produce raised therein and on July 10, 1939, defendant and his brother, Lawrence, made a complaint to Clyde E. Laubach, a State game protector, about the damage done to their garden by the deer. Following the complaint, the game protector went to the property and after looking at the garden advised defendant that they would not be permitted to kill any deer even if they did cause damage to the garden because the garden was not used, as testified by the game protector, by defendant "for sole means of getting a livelihood". Defendant and his brother advised the game protector that, notwithstanding the fact they had an income from their employment, they would kill the deer if they

did any more damage to the garden, whereupon the game protector suggested that he would write to his superior officer and asked defendant and his brother not to do anything further until the game protector had received instructions, to which defendant agreed. On July 15, 1939, the game protector again went to the residence of defendant and, while the testimony does not show the contents of the letter which he received from his superior officer, it was apparently to the effect that, under the circumstances, it was the opinion of the officer that defendant had no right to kill the deer. The letter was shown to defendant's brother, Lawrence Riggles, on July 15, 1939, and he stated to the game protector that they, meaning defendant and himself, would kill the deer notwithstanding the opinion of the game protectors. Later that evening, defendant and his brother went to the garden and saw between 12 and 20 deer there. Two of the deer were shot and killed, dressed out, and a report of the killing was immediately sent to the home of the game protector who, as soon as he learned thereof, returned to the Riggles home, saw defendant who stated that he had killed the deer, told him where the deer were lying, and the game protector found one about 20 feet inside and the other about 60 or 70 feet outside of the garden.

There is no dispute as to the amount of damage done to the garden by the deer by way of eating and destroying tomato plants and other produce raised therein. Defendant testified that the damage and loss were substantial. A large number of tomato plants were eaten during the season and it was necessary for him and his brother to replace them from time to time. The purpose of raising the garden was to supplement the earnings of defendant and his brother, Lawrence, by the vegetables raised therein, as well as to provide produce therefrom for defendant's mother, a woman approximately seventy years old.

Article I, sec. 1, of the Constitution of Pennsylvania provides that:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

The Commonwealth takes the position that under The Game Law of 1937 no person can kill a deer actually engaged in the material destruction of cultivated crops, unless the person comes within the definition set forth in section 724 thereof as one actually residing upon and cultivating "as a means of gaining a livelihood" any lands for general farm crop purposes, commercial trucking, or fruit orchard or nursery being regularly maintained for commercial purposes, with the further provision that such person shall, if required, produce satisfactory evidence that material damage has been done within 15 days and that there was just cause for reasonable apprehension of additional imminent destruction and, therefore, because defendant was employed and had an income from a source other than the garden raised upon land of which he was a part owner and upon which he resided, he was not within the class of "persons" defined in section 724 and was not permitted to kill a deer, notwithstanding any amount of damage which might be done to the garden cultivated by his brother and himself.

With this contention we do not agree. While the deer herd in Pennsylvania is the property of the Commonwealth and, acting through the legislature, the Commonwealth has the sole right to preserve, protect, and regulate the method, time, and manner of hunting and killing deer, yet any such legislation is always subject to the rule that it must not expressly or impliedly be forbidden by the Constitution.

In effect, section 724 of The Game Law provides that a man may not enjoy the right guaranteed to him by the Constitution of "acquiring, possessing and protecting property". If such be the case, no person would have the right to protect his own garden, whether a vegetable or

flower garden, cultivated solely for his own use and enjoyment, from damage done by wild deer, unless the cultivation of such garden was for general farm crop purposes, commercial trucking, or fruit orchard or nursery regularly maintained for commercial purposes. If, therefore, a man resided outside the limits of a city, in a region where there happened to be a portion of the deer herd, cultivated a small garden upon his own property for his own use or pleasure, whether a vegetable or flower garden, and had a means of livelihood entirely separate and apart from the garden maintained by him, under such construction of The Game Law he would have no right to protect the same from any damage done by deer. Article I, sec. 1, of the Constitution would afford no protection to him and, notwithstanding its plain guaranty, he would have no right to protect his property.

In our opinion, the owner, whether in whole or in part, of real estate has an indefeasible right to destroy a deer when necessary to protect his property. Therefore, insofar as section 724 of The Game Law attempts to deprive him of this right it violates article I, sec. 1, of the Constitution, and is unconstitutional.

While the facts in the case of Commonwealth v. Gilbert, 5 D. & C. 443, differ from those in this case, yet the reasoning of the late Judge Gillan, with reference to the constitutional rights of owners of land, is applicable and is hereby followed and adopted.

The case of Commonwealth v. Haugh, 12 D. & C. 795, is not at variance with this conclusion. In that case, the question for consideration was not the killing of deer by the owner of the land alleged to have been damaged by the animal but the failure to report such killing. While it was there held that the section of The Game Law, providing a penalty for failure to report the killing of a deer in order to prevent destruction of property, was a reasonable exercise of the police power and did not violate the constitutional rights of citizens to protect their own property, yet the decision clearly holds that " 'the owner of

real estate has an indefeasible right to destroy a deer when necessary to protect his crop' and that 'any legislation which undertakes to deprive him of that right contravenes the Constitution.' "

However, no person may kill a deer unless it is actually engaged in the destruction of property and unless the person killing the same is the owner or lessee of the land upon which the damage is done by the animal, or a member of the family of the owner or lessee, or an employe of such owner or lessee, and with the restriction that such animal has not been lured onto such land by a saltlick, bait, or other artificial means. Any killing by the owner or lessee of land, or a member of his family, or his employe must be reported within 12 hours after the killing, and the carcass cared for as provided by paragraph 5 of section 724 of The Game Law.

It is not necessary to consider the second reason alleged by defendant that he comes within the provisions of section 724 of The Game Law, because the cultivation of the garden in question and the use of the produce therefrom helped him to gain a livelihood for his family and thus supplemented the rather meager earnings from his other employment. It might be observed, however, that section 724 of The Game Law does not provide that the person permitted to kill a deer must cultivate his premises as a "sole" means of gaining a livelihood. The expression there used is "as a means [not the sole means] of gaining a livelihood". The word "livelihood" is defined in Webster's New International Dictionary as "means of supporting life; the goods which maintain one; subsistence, support, income, revenue, income yielding property."

The cultivation of a garden under the circumstances shown in this particular case is a method of obtaining income or support or subsistence and, to the extent that it contributes thereto, it is "a means of gaining a livelihood".

While the game laws of the Commonwealth should be strictly enforced, yet for the reasons above given we are

of the opinion that defendant was improperly convicted and that his conviction should be reversed.

### Decree

And now, September 4, 1940, the appeal of defendant is sustained and defendant is adjudged not guilty of the offense charged; the costs in this proceeding to be paid by the County of Clinton.